IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAMERIN R.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18 C 3146 |
| v. ) | |
| ) | Magistrate Judge |
| ANDREW SAUL, Commissioner of ) | Maria Valdez |
| Social Security,[2] ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Camerin R.'s claims for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's request to reverse the Commissioner's decision and remand for further proceedings is granted.

## BACKGROUND

### I. PROCEDURAL HISTORY

On July 8, 2014, Plaintiff filed a claim for DIB, alleging disability since December 7, 2013 due to rheumatoid arthritis and mental impairments. The claim

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Andrew Saul has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 14, 2016. Plaintiff personally appeared and testified at the hearing and was represented by counsel. Vocational expert ("VE") Linda M. Gels also testified.

On February 15, 2017, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II.   ALJ DECISION

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 7, 2013. At step two, the ALJ concluded that Plaintiff had severe impairments of rheumatoid arthritis and obesity and non-severe impairments of hypothyroidism, depression, and anxiety. The ALJ concluded that Plaintiff's claim of lupus, being supported by no medical signs or findings in the record, was not medically determinable during the relevant period. The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal a Listing. Before step four, the ALJ determined that Plaintiff retained the RFC to perform medium work except occasional climbing ladders and no climbing ropes or scaffolds.

At step four, the ALJ concluded that Plaintiff is capable of performing her past relevant work as a retail store manager and area supervisor, leading to a finding that she is not disabled under the Social Security Act.

## DISCUSSION

I. **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a Plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the Plaintiff presently unemployed? (2) Does the Plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the Plaintiff unable to perform her former occupation? and (5) Is the Plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the Plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The Plaintiff bears the burden of proof at steps 1-4. *Id.* Once the Plaintiff shows an inability to perform past work, the burden then shifts to

the Commissioner to show the Plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a Plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d

at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a Plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, most of which relate to the ALJ's alleged failure to consider all evidence of disability in the record and/or to include all of Plaintiff's limitation in her RFC assessment.

#### A. RFC Assessment

Plaintiff contends that the ALJ's RFC wrongly failed to include Plaintiff's limitations on concentration, persistence, and pace; fatigue; standing/walking; and fingering/handling. The Commissioner responds that the ALJ's evaluation was

5

reasonable in light of Plaintiff's subjective allegations, her treatment, and the medical opinions in the record.

### 1. *Concentration, Persistence, and Pace*

At step two of the sequential evaluation, the ALJ analyzed Plaintiff's allegations of depression and anxiety using the special technique for evaluating mental impairments. The ALJ concluded that Plaintiff's mental impairments were not severe, because applying the paragraph B criteria, she experienced only mild limitations on concentration, persistence, and pace. In formulating an RFC, however, the ALJ did not discuss any mental limitations.

Plaintiff argues that the ALJ erred by failing to account for Plaintiff's mild limitation in concentration, persistence, and pace in the RFC assessment. The Commissioner responds that because Plaintiff was not determined to have a severe mental impairment, the ALJ was not required to include any mental functional limitations in the RFC.

It is well settled that in formulating an RFC, an ALJ is required to consider all medically determinable impairments, including non-severe impairments. *See Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *see also* 20 C.F.R. § 404.1523(c) ("[W]e will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

Although the step-two special technique evaluation is not itself an RFC finding,[3] mental impairments identified in step two are to be considered in the RFC determination, and any limitations should be incorporated into the RFC. *See McCulley v. Berryhill*, No. 13 C 6031, 2019 WL 1292982, at *5 (N.D. Ill. Mar. 20, 2019); *see Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (holding that an RFC assessment must include any limitations on concentration, persistence, and pace).

The ALJ's decision itself notes that the mental RFC at steps four and five "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments." (R. 34-35.) However, there is no indication that the ALJ considered Plaintiff's stated limitations on concentration, persistence, or pace at all, let alone in detail and by function, in making her RFC determination. Therefore, the matter must be remanded to determine the effect, if any, of Plaintiff's mental limitations on the medium-work RFC finding.[4] *See Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("A failure to fully consider the impact of non-severe impairments requires reversal.").

---

[3] The ALJ expressly stated that the mental limitations identified by the special technique "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments." (R. 34-35.)

[4] The ALJ also failed to discuss Plaintiff's allegations of disabling fatigue and should discuss those claims on remand.

## 2. *Standing/Walking Limits*

Plaintiff next contends that the ALJ should have included standing/walking limitations in her RFC. In support of her allegation, Plaintiff points to her testimony that she needed to rest for fifteen to thirty minutes after walking for thirty minutes, had difficulty with stairs, and experienced problems standing. She further offers Physical Therapist Polina Burshteyn's 2015 diagnosis of decreased range of motion in the knee and ankle, leg strength, and hamstring and quadriceps flexibility; leg tenderness; and gait. According to Plaintiff, Burshteyn also noted that Plaintiff could not walk more than thirty minutes at a time.

In determining how to evaluate the opinion of a physical therapist, which is not considered an acceptable medical source, the Court is guided by Social Security Ruling ("SSR") 06-3p.[5] *See* Social Security Ruling, SSR 06-3p, 71 FR 45593-03, 2006 WL 2263437 (Aug. 9, 2006). Only evidence from an acceptable medical source, such as a licensed physician, may be used "to establish the existence of a medically determinable impairment," and only acceptable medical sources may render a medical opinion or be considered a treating source, whose opinion must be given controlling weight. *Id.* An ALJ may consider evidence from other sources, such as therapists, nurse practitioners, or physician assistants, if their "special knowledge

---

[5] Interpretive rules, such as Social Security Rulings, do not have force of law but are binding on all components of the Agency. 20 C.F.R. § 402.35(b)(1); *accord Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999). SSR 06-3p has been rescinded, and revised rules apply to claims filed on or after March 27, 2017. However, Plaintiff's claim was filed on July 8, 2014, and thus SSR 06-3p applies to this case.

8

of the individual" allows them to "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id*.

The regulations did not allow the ALJ to consider Burshteyn's opinion or diagnoses to establish the existence of an impairment, as she was not an acceptable medical source. To the extent that Burshteyn opined that Plaintiff could not walk or stand more than thirty minutes, that insight was not based on any special knowledge of Plaintiff or her condition, but merely her presenting complaints and limitations. (*See* R. 409-10.)

Plaintiff has offered no medical evidence supporting her claim that she has standing/walking limitations. To the contrary, testing done in June 2015 shows Plaintiff had a full range of motion of the neck, spine, and all extremities; "no difficulty in standing, bending, [or] sitting; and "mild difficulty lifting." (R. 431-36.) The ALJ was therefore not required to consider standing/walking limitations in the RFC.

### 3.     *Fingering/Handling Limits*

Plaintiff maintains that the ALJ should have included manipulative limitations in the RFC, based on her diagnosis of wrist synovitis in January 2013 and January, March, and September 2014; reported swelling and limited range of motion of the wrists from 2012 to 2015; and October 2014 diagnosis of mild edema of the fingers with moderate difficult in grasp finger manipulation in the left hand.

The ALJ's decision pointed out that Plaintiff was originally diagnosed with rheumatoid arthritis in early 2008, and much of the medical evidence in the case

9

predates the alleged disability onset date of December 7, 2013. A Vectra DA test for rheumatoid arthritis performed in June 2013 showed a disease activity level of 43 (within the moderate range of 33 to 44), and the next test performed in January 2014 showed a level of 49 (within the high range of 45 to 100). (R. 295-97.) Plaintiff continued to work for more than six months after the first test, and although she stopped working just before the second test was done, she has had no further testing to show the continued and/or increased severity of her disease.

The record contains few rheumatology exams during the relevant period. In August 2014, Plaintiff saw Dr. Justin Gan, who reported that Plaintiff had active joint synovitis in her wrists and painful range of motion. Plaintiff told him that prior medications had stopped working or were ineffective, and she was prescribed Xeljanz. She was also to continue other medications including Norco and Aleve, and to engage in aerobic exercise three times per week. (R. 367-68.) Plaintiff did not see Dr. Gan again for nearly two years, in May 2016. At this exam, he reported that Plaintiff was improving on Xeljanz, she had no joint synovitis, and her RA was described as "mild active." (R. 446.)

In between her visits to Dr. Gan, Plaintiff had two DDS consultative examinations, the first of which was performed by Dr. Jorge Aliaga in October 2014. The consultative report notes mild edema of Plaintiff's fingers and some mild tenderness on palpation of the wrists. (R. 391.) She reported to the examining physician that she could stand for only ten minutes and walk one block, could carry no weight, had difficulty opening and closing jars, and got fatigued while writing,

with pain in the wrists. (R. 389.) Dr. Aliaga, however, concluded that her rheumatoid arthritis "appear[ed] to be partially controlled with medication." (R. 392.)

Plaintiff was seen by consultant Dr. Julia Kogan in June 2015. Plaintiff reported to Dr. Kogan that she had difficulty writing, washing dishes, and vacuuming, and that she could not lift more than ten pounds or stand more than thirty minutes. (R. 429.) Dr. Kogan found that Plaintiff had a full range of motion in all joints and no active synovitis, and she concluded that Plaintiff had no difficulty with fine manipulation and handling small objects. (R. 436.)

Substantial evidence in the record supports the conclusion that Plaintiff does not have disabling limitations on fingering/handling. There is no indication that Plaintiff's symptoms after December 2013 were substantially more severe than they were during the previous five years in which she continued to work. Plaintiff did not obtain much treatment for her symptoms, and medical examinations generally did not show significant functional limitations of her hands.

### B. <u>Evaluation of Symptoms</u>

Plaintiff faults the ALJ for not properly evaluating her symptoms under the regulations, specifically by failing to adequately consider her subjective complaints of pain, her activities of daily living, the testimony of her mother, and her work record. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).

First, Plaintiff claims that the ALJ did not sufficiently credit her statements that she suffered pain throughout the relevant period, and that while she took

11

Humira for five years, her rheumatoid arthritis worsened, other medications did not work as well, and finally her condition improved with Xeljanz. But as discussed above, there is limited medical evidence supporting Plaintiff's claims of disabling pain.

Second, Plaintiff argues that the ALJ should have given more weight to the third-party statement of her mother Sharon Carmody, attesting that Plaintiff would occasionally stay in bed all day; had difficulty bathing, bending, and holding money; and would occasionally use a wheelchair at grocery stores. Citing the regulations governing the consideration of evidence from other non-medical sources, the ALJ gave little weight to the statement because: (1) the accuracy of the observations was in question, as Carmody was not medically trained to make exacting observations about the extent and frequency of medical signs, symptoms, or unusual moods; (2) the opinion could be colored by Carmody's close relationship with Plaintiff; and (3) the opinion was not consistent with the majority of medical opinions and evidence in the record.

Similarly, Plaintiff contends that the ALJ should have credited her testimony that due to pain and fatigue, she is limited in walking, exercising, visiting friends and family, personal care, household errands, carrying, lifting, and using her hands. The ALJ noted that despite Plaintiff's claims that she relies heavily on the assistance of her thirteen-year-old daughter and boyfriend in her activities of daily living, she is at home alone all day and is able to function without help. The ALJ further noted that Plaintiff's claims of limited activities of daily living could not be

objectively verified, and that any limitation could not be attributed to a disability, based on the lack of medical evidence in the record supporting any limitations.

The Court concludes that substantial evidence supports the ALJ's decision to discount the subjective testimony suggesting that Plaintiff was limited in her activities of daily living. The ALJ gave adequate reasons for why she did not give great weight to the statements, and those reasons are not contradicted by any objective evidence. Indeed, Plaintiff reported to Dr. Aliaga at the October 2014 consultative exam that "[s]he can bathe and dress without assistance. She can cook and grocery shop at her own pace. She can handle her money. She can sit." (R. 389-90.) In June 2015, Plaintiff told Dr. Kogan that she was independent with all her activities of daily living, and she performed all household chores. (R. 430.)

Plaintiff next criticizes the ALJ for her assessment of Plaintiff's work record, specifically her conclusion that Plaintiff's subjective complaints of pain are less credible because she continued working for five years after her rheumatoid arthritis diagnosis. According to Plaintiff, the ALJ should instead have considered her nine years of earnings prior to becoming disabled, as "a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) (internal quotations and citations omitted). Plaintiff, however, neglects to point out that the Seventh Circuit specifically stated that "[a]n ALJ is not statutorily required to consider a claimant's work history." *Id.* Furthermore, she does not attempt to offer any explanation for how she was able to work for five years in retail jobs requiring a

medium level of exertion despite her diagnosis, nor does she point to any medical records demonstrating a sudden change in her symptoms on or around the alleged onset date.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's request to reverse the Commissioner's decision is granted. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order, solely with respect to Plaintiff's mild limitations on concentration, persistence, and pace, as well as due to fatigue.

**SO ORDERED.**  **ENTERED:**

*Maria Valdez*

**DATE:     November 21, 2019**  _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**